**FILED**
**JULY 27, 2021**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37985-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MYRON LYNN WOODS, JR., | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Myron Woods appeals after being convicted of five counts of unlawful possession of a controlled substance (UPCS) with intent to deliver and two counts of unlawful possession of a firearm (UPFA). Woods received an enhanced sentence based on the jury's findings related to the first UPCS count. The jury found Woods committed that crime with a firearm and it was a major violation of the Uniform Controlled Substances Act (UCSA), chapter 69.50 RCW.

Woods argues the trial court erred in denying his *Franks*,[1] *Knapstad*,[2] and severance motions, and the State produced insufficient evidence to sustain either enhancement. We disagree and affirm. There were no material omissions in the affidavit establishing probable cause, CrR 8.3(c) precluded the *Knapstad* motion, and sufficient evidence supports the enhancements.

## FACTS

Myron L. Woods is a level 1 registered sex offender requiring yearly address verification. In March 2017, the Pierce County Sheriff's Department began attempting to verify Woods's address. He was last verified living at his mother's residence in March 2016. Between March 5 and June 6, 2017, police made 15 unsuccessful attempts to contact Woods there at various times on different days.

In May 2017, Detective Ray Shaviri contacted Woods's community corrections officer Mike Vitacolonna, who said he suspected Woods was not living at his registered address. Vitacolonna said Woods would arrive at his registered address about 30 minutes after being called. Vitacolonna told Detective Shaviri that he thought Woods lived with his girlfriend, Jennifer Johnson.

---

[1] *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).
[2] *State v. Knapstad*, 107 Wn.2d 346, 729 P.2d 48 (1986).

On the morning of June 1, 2017, Detective Shaviri went to Ms. Johnson's home. He saw Woods exit the house and talk on the phone. He also saw a white BMW parked next to the garage. The next day, he returned and saw the BMW again, but he did not see Woods.

On June 6, 2017, Detective Shaviri obtained an order authorizing a trap and trace for Woods's cell phone to aid in his investigation of the crime of failure to register and to learn where Woods was residing. The affidavit in support of the trap and trace order alleged the following facts and circumstances:

> Based on my experience investigating violations of [RCW 9A.44.132], it is common for offenders to give Law Enforcement a girlfriend, ex-wife, parent or relative's address but live at [a] different location to avoid community notification. It is also common for family and friends to lie to law enforcement about an offender's residency. . . .
> Myron Woods is a level 1 sex offender . . . . Woods gave his residence address as 14506 26th avenue court east in Tacoma. The residence belongs to his mother.
> Since 03/05/17, Deputies and Detectives have made 15 attempts to verify Myron's residency in person with no results. The[y] were told by occupants at the house that Myron was at work or many times they got no answer at the door. The attempts were made at different hours of the days and different days of the week to include weekends. . . . I called the phone number on record . . . identified myself . . . and stated that this call was regarding his residency requirements. As of this date, I have not been contacted by Myron or anyone in his household.
> On 5/31/16,[3] I contacted Myron's Community Corrections Officer, Mike Vitacolonna [who] stated that over the past 2 to 3 months, he has

---

[3] This appears to be a typographical error. The year was 2017.

3

attempted to check on Myron at his residence multiple times with negative results. . . . [H]e suspected that Myron was residing elsewhere.

He stated Myron has a girlfriend named Jennifer Johnson who was also his approved chaperone. . . .

I located Jennifer M. Johnson's residence at 5645 South Cedar Avenue in Tacoma. . . .

On 06/01/17, at about 0825 hours, I drove by 5645 South Cedar Avenue . . . . At about 0850 hours, I noticed a black male had stepped outside and was sitting on a chair that was to the right of the front door. He appeared to be on the phone. I . . . recognized the male to be Myron Woods.

*Your affiant is requesting permission to have T-Mobile obtain location information for [Woods's phone number] in the hopes of building a case to show that Myron Lynn Woods is not residing at his registered address and [is]thereby committing the crime of Failure to register as a sex offender, a violation of RCW 9A.44.132, a felony in the State of Washington.*

Clerk's Papers (CP) at 29-30.

Detective Shaviri continued conducting physical and electronic surveillance of Woods through June 2017. He saw Woods and his BMW at Ms. Johnson's home many times and saw the BMW at a residence on Waller Road. His investigation revealed that Woods was at his registered address for less than five hours in a two and one-half week period, never spent the night, and stayed with Ms. Johnson or at the Waller Road residence. Detective Shaviri found probable cause to arrest Woods for failure to register as a sex offender. Detective Shaviri enlisted the help of Detective Shawn Darby and the Special Investigations Unit to arrest Woods.

4

*Arrest and subsequent searches*

On June 27, 2017, Detective Darby followed Woods's BMW as he left Waller Road and parked in front of a business. When Detective Darby told Detective Shaviri that Woods was parked nearby, Detective Shaviri instructed him to effect an arrest. When Detective Darby and his coworker approached the vehicle, they saw cash and several small "baggies" on Woods's lap. The baggies were tightly wound, filled with a white and a dark brown substance, and looked typical for street level drug sales. They detained a passenger, who identified himself as Julian Jennings. They arrested Woods and found $3,795 in various denominations on his person.

After Woods was in custody, Detective Darby obtained a search warrant for Woods's vehicles and the Waller Road residence. His probable cause statement in support of the search warrant was based in part on statements given by Mr. Jennings, who said he bought heroin from Woods almost every day.

A search of Woods's BMW revealed two cell phones, a pill bottle filled with 70 alprazolam pills, and 4 amphetamine pills, in addition to the 9 bags of cocaine and heroin seen on Woods's lap before his arrest. The bags of heroin weighed approximately 3 grams each.

A search of the Waller Road residence revealed a surplus of drugs and drug dealing paraphernalia. In a dresser drawer in the bedroom, police found 522 methamphetamine pills and 21 bindles of cocaine weighing approximately 1 gram each. A bindle containing 223 grams of heroin and another 8 bindles each containing 25 grams of heroin were found in the laundry room. They also found tablets with the pharmaceutical markings of oxycodone and loose cocaine on the kitchen table.

The police found numerous items used for the preparation, packaging, and distribution of controlled substances in the kitchen. In the cabinet, detectives found coffee grinders with white powder inside, an electronic money counter, a digital scale covered with white and dark residue, three bottles of caffeine powder, two plastic cups containing black residue, 1,000 empty gelatin caps, and 18 boxes of plastic bags.

A detective discovered a secret compartment in the kitchen table that contained a kilogram (2.25 pounds) of cocaine. The kitchen table was five to seven feet away from the couch in the living room. Underneath a couch cushion, detectives found a loaded firearm. The firearm was registered to an individual named Kenneth Holtz. Another firearm was found underneath the cushion of a chair nearby. This weapon was registered as stolen.

*Procedural history*

The State initially charged Woods with six counts of unlawful possession of a controlled substance with intent to deliver and two counts of unlawful possession of a firearm in the first degree.[4] With respect to the first count, the State alleged various enhancements and aggravators including a firearm enhancement and that the crime constituted a major violation of the USCA. The State additionally charged Woods with failure to register as a sex offender under another cause number not on appeal.

Woods's criminal history showed 12 prior felony convictions, including three second degree child molestation convictions and one second degree assault conviction. In September 2017, the State notified him that he faced sentencing as a persistent offender on count 1.

In January 2019, Woods requested a *Franks* hearing on the trap and trace order for his cellphone location data. He argued the Department of Corrections (DOC) made numerous contacts with him over the past year, his address was verified in 2016 and no one attempted to do so again until 2017, and only five of the attempted verifications occurred during the period when he had constant contact with the DOC.

---

[4] The State dismissed count 5, unlawful possession of ecstasy, on the first day of trial.

The court denied Woods's request for a *Franks* hearing, finding Woods "has not met his burden of a substantial preliminary showing that a false statement knowingly and intentionally or with reckless disregard for the truth was included by Detective Shaviri in the warrant affidavit." CP at 180. The undisputed facts showed that sheriffs physically went to Woods's registered address 19 times to check on him but never made contact. The DOC had in-person contact at their offices 10 times during that period. The court discounted the 10 in-person contacts at DOC because "[t]he real issue is whether or not defendant was residing at the residence he registered at . . . ." CP at 180.

Woods also moved to dismiss the firearm enhancement on count 1 and the persistent offender allegation pursuant to *Knapstad*. The court denied the motion. It explained the dismissal of a firearm sentencing enhancement was not appropriate at that time because cases depending on a nexus between the defendant, the crime, and a firearm are extremely fact specific. It found: "A reasonable jury could infer that the defendant had the firearm to protect the drugs found inside the home, without prejudice to any defense motion." CP at 184. The material issues regarding the nexus needed to be determined by the trier of fact; therefore, resolving this issue on *Knapstad* grounds was "difficult." *Id.*

Shortly before trial, Woods moved to sever the controlled substances and firearms charges. He argued the firearms charges would necessitate the admission of prior convictions and cause prejudice on the drug charges. The State opposed severance, arguing any prejudice could be cured by stipulation to prior convictions and jury instructions. The court denied severance. Woods then stipulated to a prior offense disqualifying him from possessing firearms.

*Trial and sentencing*

Several law enforcement officials testified to the street value and nature of the drugs found in the Waller Road residence. The kilogram of cocaine alone, not accounting for increased volume with cutting agents, was worth between $32,000 and $37,000. Typically, cocaine is transported across the border in kilogram packages, requiring an established relationship between Woods and a supplier. The 445 grams of heroin and 522 methamphetamine pills in Woods's home were estimated to be worth $45,000 and $76,000, respectively.[5]

At the close of evidence, the court denied Woods's renewed motion to sever. The jury found him guilty as charged and further found by special verdict that he was armed

---

[5] *See* Report of Proceedings (RP) at 429-30 (Detective testifies that heroin sells for $80 to $100 and methamphetamine pills sell for $20 to $60.); RP at 966-70 (Prosecutor estimates total value in closing argument.).

with a firearm and committed a major controlled substances violation with respect to count 1.

Woods moved to dismiss the special verdict allegations notwithstanding the verdict. The State argued the motion was untimely and sufficient evidence supported the firearm enhancement. The court denied Woods's motion.

At sentencing, Woods stipulated to his criminal history and offender score of 9+. The court found that he was a persistent offender and imposed a life sentence without the possibility of release on count 1.

Woods timely appealed.

## ANALYSIS

A. LEGALITY OF THE TRAP AND TRACE WARRANT

Woods contends the trial court erred by failing to suppress the trap and trace warrant and refusing to grant him a *Franks* hearing. He raises several subissues that we address in turn.

### 1. *General standards*

Both the state and federal constitutions require a search for cell phone location data to be authorized by a warrant based on probable cause. *State v. Muhammad*, 194 Wn.2d 577, 595-96, 451 P.3d 1060 (2019); *Carpenter v. United States*, __ U.S. __, 138

10

S. Ct. 2206, 2221, 201 L. Ed. 2d 507 (2018). Probable cause exists where sufficient facts lead a reasonable person to conclude there is a probability of criminal activity, the evidence of which can be found at the place searched. *State v. Maddox*, 152 Wn.2d 499, 509, 98 P.3d 1199 (2004). "It is only the probability of criminal activity and not a prima facie showing of it which governs the standard of probable cause." *State v. Seagull*, 95 Wn.2d 898, 907, 632 P.2d 44 (1981). The determination is a practical one where the magistrate considers all circumstances alleged in the affidavit and draws common sense inferences therefrom. *Id.*; *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).

Great deference is given to the issuing judge's determination of facts relevant to probable cause. *State v. Clark*, 143 Wn.2d 731, 748, 24 P.3d 1006 (2001). All doubts are resolved in favor of the order's validity. *Id.* We review de novo the trial court's determination of probable cause. *State v. Garcia-Salgado*, 170 Wn.2d 176, 183, 240 P.3d 153 (2010).

2.      *Probable cause supported the warrant*

Woods first argues the affidavit supporting the trap and trace warrant failed to establish probable cause that he was not residing at his registered address in violation of RCW 9A.44.130. Under the statute, a person convicted of a qualifying sex offense

11

must provide the sheriff's department a complete and accurate residential address. RCW 9A.44.130(1)(a). That residence must be the place the offender "'habitually uses as living quarters a majority of the week.'" *State v. Cathers*, 13 Wn. App. 2d 29, 32, 461 P.3d 375 (2020) (emphasis omitted) (quoting RCW 9A.44.128(5)). This means the offender is consistently and usually at this residence. *Id.* at 33.

Detective Shaviri suspected Woods was violating RCW 9A.44.130 based on several facts. Most importantly, Woods was not at his registered address on 15 separate occasions despite attempts to verify on different days and at different times to accommodate his work schedule. Further, Woods's community corrections officer suspected he was living with Ms. Johnson because he would arrive at his registered address 30 minutes after being called, and Ms. Johnson lived that far away. Detective Shaviri saw Woods outside Ms. Johnson's house one morning, supporting this suspicion. These facts, viewed in their totality, support an inference that Woods was not habitually living at his registered address in violation of RCW 9A.44.130.

3. *The warrant was not issued based on generalized statements alone*

Woods next argues the court should not have considered Detective Shaviri's generalized statements about sex offenders. He relies on *State v. Thein*, 138 Wn.2d 133, 977 P.2d 582 (1999). There, Thein sought to suppress evidence from a search of his

12

home.  The search warrant was based on contraband found outside his home and an

officer's generalized statement that drug dealers commonly store contraband in their

homes.  The Supreme Court held that an officer's broad generalizations about the habits

of drug dealers were insufficient, alone, to establish probable cause.  *Id.* at 148-50.  *Thein*

is distinguishable.

Here, the finding of probable cause did not depend on Detective Shaviri's

generalized statements about sex offenders.  Detective Shaviri provided specific

information that there had been 15 failed attempts to verify that Woods was living with

his mother at his registered address.  As noted previously, a person's residence is a place

where a person habitually lives the majority of the week.  The warrant was based on the

allowable inference that 15 failed attempts to verify that Woods was living at his

registered address meant that Woods probably was not habitually living there the majority

of the week.  The detective's generalized statement that it was not unusual for an offender

to register with a relative but reside elsewhere merely confirmed the allowable inference.

### 4.    Unsupported "ruse" argument

Woods next argues the warrant was a ruse to gather information on controlled

substance violations after he failed a urinalysis in January 2017.  Yet he provides no

evidence that Detective Shaviri, who works for the sex offender registry unit, sought to

catch Woods with drugs or weapons.  While Detective Shaviri enlisted the help of the

Special Investigations Unit to effectuate Woods's arrest, there is no evidence that the

entire investigation into Woods's failure to register offense was a ruse.  Without a

meaningful argument or citations to the record and authority, we will not review this

claim.  RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809,

828 P.2d 549 (1992).

> 5.      Franks *hearing*

Woods contends the trial court erred in denying his requested *Franks* hearing.  He

alleges the affidavit supporting the trap and trace order contained false and misleading

statements entitling him to a hearing on the matter.  We disagree.

A warrant may be invalidated by material factual inaccuracies in the supporting

affidavit that are made with reckless disregard for the truth.  *State v. Chenoweth*, 160

Wn.2d 454, 462, 479, 158 P.3d 595 (2007); *Franks*, 438 U.S. at 155-56.  Negligence or

inadvertence does not meet this standard.  *Chenoweth*, 160 Wn.2d at 462; *Franks*, 438

U.S. at 171.  We presume the affidavit supporting a search warrant is valid.  *State v.*

*Atchley*, 142 Wn. App. 147, 157, 173 P.3d 323 (2007) (citing *Franks*, 438 U.S. at 171).

A defendant challenging the affidavit must make a "substantial preliminary

showing that a false statement knowingly and intentionally, or with reckless disregard for

14

the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause . . . ." *Franks*, 438 U.S. at 155-56. If the defendant successfully shows a reckless or deliberate omission of fact, then the omitted information must be considered part of the affidavit. *Atchley*, 142 Wn. App. at 158. If the affidavit supports a probable cause finding after inserting the improperly omitted information, no *Franks* hearing is required. *State v. Garrison*, 118 Wn.2d 870, 873, 827 P.2d 1388 (1992). We review the denial of a *Franks* hearing for abuse of discretion. *State v. Wolken*, 103 Wn.2d 823, 830, 700 P.2d 319 (1985).

Woods argues Detective Shaviri intentionally omitted the following information: (1) he was verified in March 2016, (2) no attempts to verify his residency were made until March 2017, and (3) according to DOC logs, DOC had frequent contact with him from January 2017 until June 2017. To warrant a *Franks* hearing, Woods had to show that Detective Shaviri intentionally or recklessly omitted this information from the affidavit. As explained below, Woods has not shown this.

With respect to Woods's first two points, the sheriff's department verifies the addresses of level 1 sex offenders once per year. That Woods's address was last verified in March 2016 and the sheriffs did not attempt to do so again until March 2017 is predictable.

15

With respect to Woods's third point, the "omitted" DOC logs are quoted on pages 7-10 of his opening brief. An examination of those logs show that DOC had frequent in-person contacts with Woods, but most of those contacts were at the DOC office. Only two out of four times was DOC able to contact him at his registered address, which does not show that DOC had frequent in-person contacts with Woods at his registered address. These logs establish very little and were thus immaterial for determining whether Woods actually resided at his registered address. We conclude that their omission did not warrant a *Franks* hearing.

B.      *KNAPSTAD* MOTION

Woods contends the trial court erred in denying his *Knapstad* motion to dismiss. We disagree.

Under *Knapstad*, a defendant may move to dismiss a criminal charge when there are no disputed material facts to establish guilt as a matter of law. *State v. Bauer*, 180 Wn.2d 929, 935, 329 P.3d 67 (2014); CrR 8.3(c). The court is to rely only on facts admissible at trial and view those facts and the reasonable inferences drawn therefrom in the light most favorable to the State. *State v. Freigang*, 115 Wn. App. 496, 502-03, 61 P.3d 343 (2002); CrR 8.3(c)(3). To survive a *Knapstad* motion, "the State must provide at least some evidence supporting each element of the crime charged to merit

16

consideration by a jury." *State v. Montano*, 169 Wn.2d 872, 879, 239 P.3d 360 (2010).

We review a trial court's *Knapstad* ruling de novo. *Bauer*, 180 Wn.2d at 935.

The State argues the trial court was precluded from dismissing the firearm

enhancement because the underlying unlawful possession with intent to deliver charge

was not subject to dismissal. We agree. CrR 8.3(c)(3) provides: "The court shall not

dismiss a sentence enhancement or aggravating circumstance unless the underlying

charge is subject to dismissal under this section." Woods did not seek dismissal of count

1, which was one of the six initial possession with intent to deliver charges. Thus, the

firearm enhancement was not subject to dismissal under CrR 8.3(c)(3), and the trial court

properly denied Woods's *Knapstad* motion.

C.     SUFFICIENCY OF THE EVIDENCE

Woods contends the State brought insufficient evidence that he was armed and that

he committed a major controlled substances violation. We address each issue in turn.

1.     *Firearm enhancement*

"A claim of insufficiency admits the truth of the State's evidence and all

inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192,

201, 829 P.2d 1068 (1992). The test for sufficiency requires us to ask whether, after

interpreting the evidence and inferences in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *Id.*

"Whether a person is armed is a mixed question of law and fact." *State v. Sassen Van Elsloo*, 191 Wn.2d 798, 825, 425 P.3d 807 (2018). We determine whether the facts are sufficient to prove that the defendant was armed as a matter of law. *Id.* An offender is armed for purposes of a firearm enhancement when: (1) the firearm is easily accessible and readily available for offensive or defensive use at the time of the crime, and (2) there is a nexus between the defendant, the crime, and the weapon. *Id.* at 826.

The nexus requirement means the firearm must be related to the defendant and the crime, rather than being coincidentally present. *Id.* at 827; *see also State v. Barnes*, 153 Wn.2d 378, 383, 103 P.3d 1219 (2005) ("The mere presence of a deadly weapon at the crime scene is insufficient to show that the defendant is 'armed.'"). However, "[a] defendant does not have to be armed at the moment of arrest to be armed for purposes of the firearms enhancement." *State v. O'Neal*, 159 Wn.2d 500, 504, 150 P.3d 1121 (2007). There is sufficient evidence a defendant is armed if a jury could reasonably find that a weapon is present to protect an ongoing criminal enterprise. *Sassen Van Elsloo*, 191 Wn.2d at 829; *State v. Eckenrode*, 159 Wn.2d 488, 494, 150 P.3d 1116 (2007).

18

Woods contends the State failed to prove he was armed at the time of the

controlled substances violations, emphasizing that the firearms were not in his possession

when he was arrested and were in an entirely separate location.[6]  He cites *State v.*

*Valdobinos*, 122 Wn.2d 270, 858 P.2d 199 (1993), and *State v. Mills*, 80 Wn. App. 231,

907 P.2d 316 (1995), to support his position that no nexus was established.  His reliance

on those cases is misplaced.

In *Valdobinos*, the defendants' mobile home was searched following a controlled

buy.  122 Wn.2d at 273.  The search revealed cocaine, thousands of dollars, and a bus

ticket under a bed.  *Id.* at 273-74.  An unloaded rifle was also found under a bed, although

it is unclear if it was under the same bed as the cocaine.  *Id.* at 282.  The jury found the

defendants guilty of controlled substances violations while armed.  *Id.* at 274.  The

Supreme Court reversed the firearm enhancement, holding that the State failed to prove

the rifle was readily accessible during the commission of the crime.  *Id.* at 282.

In *Mills*, police found Mills outside of his home and found a small baggie of

methamphetamine in his car.  80 Wn. App. at 233.  In the squad car, Mills attempted to

---

[6] In his reply, Woods contends the State brought insufficient evidence that he resided at the Waller Road address where the drugs and weapons were found.  Although he presented this argument at trial, he did not assign error to the issue on appeal nor did he raise it in his opening brief.  We will not address arguments raised for the first time in the reply.  *Cowiche Canyon*, 118 Wn.2d at 809; RAP 10.3(a)(4), (6).

19

hide a motel key. *Id.* Police obtained a search warrant for the motel room and found 118 grams of methamphetamine and a pistol. *Id.* After a bench trial, Mills was convicted of possession with intent to distribute with a firearm enhancement. *Id.*

This court reversed the firearm enhancement, holding that the State failed to prove Mills, the pistol, and the methamphetamine were ever in the motel room at the same time. *Id.* at 234. We found the trial court incorrectly reasoned there was "potential" for Mills to have been in the room with the pistol even though he was not present when the search was executed. *Id.* at 236-37.

Neither of these cases are persuasive. *Valdobinos* came out nearly three decades ago, is devoid of facts relating to the firearm enhancement, and contains only a cursory analysis of the issue. And *Mills* is distinguishable: Mills had a key to the motel room with the gun and drugs *but was never seen there*. Here, on the day of his arrest, police saw Woods leave the Waller Road residence—a subsequent search of which revealed large amounts drugs, drug selling equipment, and two weapons.

The nexus requirement simply requires a connection between Woods, the firearms, and the controlled substances. The police arrested Woods after he left his residence where two guns were hidden paces away from a kilogram of cocaine. While the drugs were stowed all throughout the house and not directly next to the guns in the couch and

20

chair, we view the evidence and inferences in the light most favorable to the State. To

establish a nexus, the State was not required to prove Woods had the guns on him at the

time of his arrest. *O'Neal*, 159 Wn.2d at 504. A kilogram of cocaine and numerous items

related to Woods's drug operation were stashed within feet of the guns. A reasonable

jury could infer the firearms were used to protect Woods's drug operation.

> 2. *Major controlled substances violation*

Woods next contends the State brought insufficient evidence that he committed a

major controlled substances violation justifying the sentence enhancement. Specifically,

he argues the State failed to prove he attempted to, or actually transferred, quantities of

controlled substances larger than for personal use. We disagree.

An exceptional sentence may be imposed for a major violation of the UCSA. A

major violation is "more onerous than the typical offense of its statutory definition."

RCW 9.94A.535(3)(e). Any of the following factors turn an offense into a major offense:

> (i) The current offense involved at least three separate transactions
> in which controlled substances were sold, transferred, or possessed with
> intent to do so;
> (ii) The current offense involved an attempted or actual sale or
> transfer of controlled substances in quantities substantially larger than for
> personal use;
> . . . .
> (iv) The circumstances of the current offense reveal the offender to
> have occupied a high position in the drug distribution hierarchy;

21

(v) The current offense involved a high degree of sophistication or planning, occurred over a lengthy period of time, or involved a broad geographic area of disbursement . . . .

*Id.*

When reviewing an insufficiency claim of this type, we compare the facts of the case to an average violation of the UCSA. *State v. Solberg*, 122 Wn.2d 688, 703, 861 P.2d 460 (1993). For instance, the sale of one ounce of cocaine may constitute a major violation when testimony establishes that one gram is a typical dose for personal use. *State v. Negrete*, 72 Wn. App. 62, 69, 863 P.2d 137 (1993).

Here, viewing the evidence and inferences in the light most favorable to the State, sufficient evidence supports the finding that Woods committed a major violation of the UCSA. First, he had 8 3-gram packages of heroin and 1 baggie of cocaine on his lap when he was arrested in his vehicle. Testimony established that typical street-level sales are between 1 and 3 grams. This supports a finding that Woods intended to make more than three transactions. Second, over 1,000 grams of cocaine were found in Woods's residence. If customers buy and use 1 to 3 grams at a time, this quantity is 333 to 1,000 typical doses. Third, testimony established that one must have cross-border connections and established relationships to obtain a kilogram of cocaine. This supports a finding that Woods occupies a higher position in a drug distribution hierarchy than a typical street-

level dealer.  Finally, Woods's residence was filled with scales, substances to cut the

drugs with, empty pill capsules that he presumably filled with diluted product, and 18

boxes of plastic baggies.  This supports a finding that Woods had a somewhat

sophisticated drug dealing operation.

Woods has not convinced us that any of the statutory factors do not apply.  His

argument that there was no actual "delivery" or testimony that he planned to distribute the

drugs is weak.  No recreational drug user has a kilogram of cocaine hidden in their

kitchen for personal use.  The distribution paraphernalia paired with the sheer quantity of

cocaine alone supports a finding that Woods had intent to deliver the drugs.  There is little

doubt that Woods's offense was more onerous than a typical violation of the UCSA.

We conclude that the State presented sufficient evidence supporting the finding

that Woods was armed and that he committed a major violation of the UCSA.

D.    SEVERANCE MOTION

Woods contends the trial court erred in denying his motion to sever the firearm

charges from the unlawful possession of controlled substances charges.  We disagree.

CrR 4.3(a) permits joinder of charges where the offenses are of the same or similar

character, based on the same conduct, or are part of a single scheme or plan.  *State v.*

23

*Bluford*, 188 Wn.2d 298, 310, 393 P.3d 1219 (2017).  Generally, joint trials are preferred over separate trials.  *State v. Dent*, 123 Wn.2d 467, 484, 869 P.2d 392 (1994).

"'Severance' refers to dividing joined offenses into separate charging documents." *Bluford*, 188 Wn.2d at 305-06.  A defendant seeking severance must show that a joint trial "'would be so manifestly prejudicial as to outweigh the concern for judicial economy.'"  *State v. Nguyen*, 10 Wn. App. 2d 797, 815, 450 P.3d 630 (2019) (quoting *State v. Bythrow*, 114 Wn.2d 713, 718, 790 P.2d 154 (1990)), *review denied*, 195 Wn.2d 1012, 460 P.3d 178 (2020).  If the defendant does so, the court severs the charges to "promote a fair determination of the defendant's guilt or innocence of each offense." CrR 4.4(b).

We review a trial court's ruling on a severance motion for abuse of discretion. *Dent*, 123 Wn.2d at 484.  In determining whether to grant a motion to sever, a trial court considers: (1) the strength of the State's evidence on each count, (2) the clarity of the defenses, (3) jury instructions to consider each count separately, and (4) the admissibility of evidence of the other charges if not joined for trial.  *State v. Sutherby*, 165 Wn.2d 870, 884-85, 204 P.3d 916 (2009).  The court then weighs the prejudice to the defendant against judicial economy.  *State v. Russell*, 125 Wn.2d 24, 63, 882 P.2d 747 (1994). Prejudice may arise "when there is a risk that the jury will use the evidence of one crime

to infer the defendant's guilt for another crime or to infer a general criminal disposition."
*Sutherby*, 165 Wn.2d at 883; *accord State v. Watkins*, 53 Wn. App. 264, 268, 766 P.2d
484 (1989). In cases where "joinder will cause clear, undue prejudice to the defendant's
substantial rights, no amount of judicial economy can justify requiring a defendant to
endure an unfair trial." *Bluford*, 188 Wn.2d at 311.

The State filed all counts on the same charging document: all charges arose from
Woods's ongoing drug distribution enterprise. Joinder was appropriate here under
CrR 4.3(a) and Woods fails to persuasively argue that any of the four severance factors
weigh in his favor. Nonetheless, we proceed to analyze them.

First, there was strong and similar evidence of the firearms and controlled
substances violations. Charges may be joined unless the strength of the evidence
supporting each is so dissimilar as to create undue prejudice. *Russell*, 125 Wn.2d at 64.
The State found the drugs and weapons on Woods's person, in his vehicle, and in his
residence; the evidence was the same for each charge. This factor weighs against
severance.

Second, Woods asserted the same defense for all charges: he argued the State
failed to prove his dominion and control over the drugs and firearms. Joinder does not
impede a defendant's ability to present a defense when the defense is the same for all

charges and is not mutually antagonistic. *State v. Canedo-Astorga*, 79 Wn. App. 518, 528, 903 P.2d 500 (1995). This factor weighs against severance.

Third, the jury was instructed to consider each count separately. Charges may remain joined unless the jury cannot be instructed to consider each count separately. *Russell*, 125 Wn.2d at 62-63. We presume the jury follows the court's instructions. *State v. Lamar*, 180 Wn.2d 576, 586, 327 P.3d 46 (2014).

Finally, although the evidence of the firearms charges would not have been cross-admissible in a separate controlled substances trial, no undue prejudice resulted. The jury would have heard evidence of the firearms in the drug trial even if the charges had been severed because count 1 was charged with a firearm enhancement.

Woods's reliance on *Sutherby* is misplaced. *Sutherby* involved charges of child rape and child pornography, and the court emphasized the heightened risk of prejudice in sex cases where the jury is less likely to follow instructions to consider counts separately. 165 Wn.2d at 883-84. This reasoning is inapplicable here. That Woods committed controlled substance violations does not tend to show he also committed firearms violations. The inherently prejudicial nature of the crimes in *Sutherby* is simply not present here. We conclude that the trial court did not abuse its discretion in denying Woods's motion to sever the firearms charges from the controlled substances charges.

No. 37985-0-III
*State v. Woods*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____          _____
Siddoway, A.C.J.                          Fearing, J.