IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36885-8-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| GLEN LINDSAY CATHERS, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — RCW 9A.44.130(6)(a) requires a registered sex

offender who lacks a fixed residence to notify the appropriate sheriff's department within

three business days after ceasing to have a "fixed residence." Failure to do this

constitutes failure to register. RCW 9A.44.128(5) defines "fixed residence" as "a

building that a person lawfully and habitually uses as living quarters a majority of the

week." We conclude that a registered sex offender does not cease to have a "fixed

residence" simply because the offender is temporarily gone from his residence for 7 to 12

days. We, therefore, reverse Glen Cathers's conviction for failure to register.

FACTS

Glen Cathers is a level 1 sex offender and is required to register in Klickitat County. He first registered in Klickitat County in 1998[1] and was compliant with his registration requirements for 20 years.

The Klickitat County Sheriff's Department checks the residential status of level 1 sex offenders, such as Cathers, once per year. In June 2018, the Department's criminal records technician directed a deputy to verify Cathers was residing at his registered address on Jenkins Creek Road.

On June 20, 2018, Deputy Timothy Neher went to Cathers's registered address. He arrived at the address after 5:00 p.m., and no one was there. He left a business card in the door. The next day, Deputy Neher returned to the address. Cathers was not there, but the deputy did speak with a person who was there, Kathleen O'Brennan. On June 27, 2018, Deputy Neher returned once again to the address. Cathers was not there, but Ms. O'Brennan was. The deputy did not notice any evidence that Cathers had or was in the process of moving out.

---

[1] The trial court's finding says 1998. The testimony at trial was 1988. Neither party assigned error to the finding. A probable cause statement supports 1998. It is unimportant to our decision.

Ms. O'Brennan is a friend of Cathers and his partner, Naomi Fisher. The couple hires her once or twice per year to watch their cats when they travel. Ms. O'Brennan was watching their cats when the deputy came by in June. She watched their cats for a 12-day period. The trial court found that Cathers was "gone from his residence" between 7 and 12 days. Clerk's Papers at 10 (Conclusion of Law 9).

Several months later, the State charged Cathers with felony failure to register as a sex offender. Cathers waived his right to a jury trial. On the above facts, the trial court found Cathers guilty. The trial court entered a judgment of conviction, sentenced Cathers to 30 days in jail, and approved a $10,000 appeal bond.

Cathers timely appealed.

## ANALYSIS

Cathers accepts the trial court's findings of fact and argues those findings are insufficient to establish he violated RCW 9A.44.130.

The State charged Cathers for failure to register as a sex offender, citing RCW 9A.44.132(1), which provides:

> A person commits the crime of failure to register as a sex offender if the person has a duty to register under RCW 9A.44.130 for a felony sex offense and knowingly fails to comply with any of the requirements of RCW 9A.44.130.

3

The State relied on RCW 9A.44.130(6)(a), which provides:

Any person required to register under this section who lacks a fixed residence shall provide signed written notice to the sheriff of the county where he or she last registered within three business days after *ceasing to have a fixed residence. . . .*

(Emphasis added.)

To determine whether the trial court's findings were sufficient to convict Cathers for failure to register, we must determine what the State was required to prove under RCW 9A.44.130(6)(a).

"In interpreting a statute, our primary goal is to determine and give effect to the legislature's intent and purpose in creating the statute." *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 354, 144 P.3d 276 (2006). "We generally begin our analysis with the text of the statute." *Id.* "If the statute is clear and unambiguous on its face, we determine its meaning only from the language of the statute and do not resort to statutory construction principles." *Id.* "A statute is ambiguous only if it can be reasonably interpreted in more than one way, not merely because other possible interpretations exist." *Id.*

We first determine what "ceasing to have a fixed residence" means.

"Fixed residence" means a building that a person lawfully and *habitually uses as living quarters a majority of the week*. Uses as living quarters means to conduct activities consistent with the common understanding of

4

> residing, such as sleeping; eating; keeping personal belongings; receiving
> mail; and paying utilities, rent, or mortgage. . . .

RCW 9A.44.128(5).

The State argues Cathers ceased having a fixed residence when he did not use his living quarters a majority of one week. It further argues, because Cathers did not provide signed written notice to the sheriff within three business days after ceasing to have a fixed residence, as required by RCW 9A.44.130(6)(a), he was guilty of failure to register. We disagree.

The State's construction of "fixed residence" ignores the word "habitually." When construing a statute, we must give effect to every word. *HomeStreet, Inc. v. Dep't of Revenue*, 166 Wn.2d 444, 452, 210 P.3d 297 (2009).

"Habitually" is not defined. "When a statute fails to define a term, a court may rely on the ordinary meaning of the word as stated in a dictionary." *State v. Klein*, 156 Wn.2d 102, 116, 124 P.3d 644 (2005). "Habitually" means "consistently, persistently, repeatedly, usually." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1017 (1993). A person who uses a building as his or her living quarters, yet is occasionally away for one or two weeks, still "habitually" lives there a majority of the week. This is because the person is consistently and usually there.

5

No. 36885-8-III
*State v. Cathers*

The trial court was concerned that a convicted sex offender might evade the registration requirements by listing an address but never or rarely using it. Under our construction of RCW 9A.44.130(6)(a), a person who never or rarely uses the listed residence would be guilty of failure to register.

But those are not the facts here. The trial court found that Cathers was gone from his residence between 7 and 12 days. We conclude the trial court's findings were insufficient to establish that Cathers ceased having a fixed residence within the meaning of RCW 9A.44.130(6)(a).[2] We direct the trial court to vacate Cathers' conviction with prejudice.

Reversed.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Fearing, J.

---

[2] We invite the legislature to provide greater detail in this area. How long may level 1, 2, or 3 sex offenders be absent from their residences? Should registered sex offenders be required to notify the sheriff's office before being absent for more than three days? Should registered sex offenders be required to disclose where they plan on staying each day, and be required to be reachable by telephone for efficient verification? Courts are ill-equipped to fill in these gaps.