IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint Petition of<br><br>ADRIAN MARTINEZ LOYOLA,<br><br>            Petitioner. | No. 87032-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — Adrian Martinez Loyola[1] filed this personal restraint petition (PRP) challenging his serious prison disciplinary infraction for "causing an inaccurate count" under WAC 137-25-030(1)(653).  Martinez Loyola contends that the evidence was insufficient to sustain the guilty finding and he did not receive adequate notice.  Because Martinez Loyola fails to demonstrate that he was deprived of a fundamentally fair proceeding, we deny the PRP.

FACTS

Martinez Loyola has been an inmate at Coyote Ridge Corrections Center (CRCC) since December 21, 2023.  CRCC conducts a formal facility count four

---

[1] Petitioner's counsel's filed briefs identifying the petitioner as "Martinez-Loyola."  The hyphen is often used to prevent improper alphabetization using the second part of the surname.  *In re Pers. Restraint of Garcia-Mendoza*, 196 Wn.2d 836, 841 n.1, 479 P.3d 674 (2021).  Because Martinez Loyola does not use a hyphen in his pro se petition, we follow his spelling of his own name in this opinion.  *Id.* (recognizing defendant's hyphenated name in the court's docket is not how defendant spells his own name and electing to follow defendant's spelling of his own name).

times a day: 12:00 a.m. (midnight), 6:20 a.m., 4:00 p.m., and 9:00 p.m.  During a formal count, prison staff count each inmate after observing obvious signs of life and reconcile their counts with each other.  If the total facility count matches the master count, the count has "cleared."  If the count does not clear, prison staff conduct a recount following the same procedures.  If the recount does not clear, prison staff conduct a formal picture card count.  This requires prison staff to positively identify each inmate by visually matching each inmate's identification card to the inmate and to the unit roster.

On June 25, 2024, the 4:00 p.m. formal standing count was announced on the CRCC loudspeaker at 4:01 p.m.  The 4:00 p.m. formal count at CRCC is a standing count.  During a standing count, inmates must sit upright on their assigned bunks unless they have a documented medical condition that prevents them from doing so.  Martinez Loyola does not have a documented condition.

While conducting the 4:00 p.m. formal standing count, corrections officers counted only one incarcerated individual in Martinez Loyola's cell.  After master control reported that Martinez Loyola's unit was down one individual, the corrections officers informally recounted and arrived at the same number.  At around 4:55 p.m., a formal recount was initiated across CRCC.  After conducting the recount in the presence of a sergeant, again, only one individual was counted in Martinez Loyola's cell.

At 6:01 p.m., a formal picture count commenced.  Upon reaching Martinez Loyola's cell, the officers saw Martinez Loyola reach down from the upper bunk

2

while lying on his back to pass his identification card to his cell mate. The officers did not see Martinez Loyola before this because their view of the top bunk was obscured by a duffel bag placed at the end of the bunk facing the cell door.

The Department of Corrections (DOC) charged Martinez Loyola with violating WAC 137-25-030(1)(653) (WAC 653), which prohibits "[c]ausing an inaccurate count or interfering with count by means of unauthorized absence, hiding, concealing oneself, or other form of deception or distraction[.]" Martinez Loyola was timely notified of the charges and the scheduled hearing date.

At the July 2, 2024 hearing, Martinez Loyola pleaded not guilty and asserted that that he "never did it on purpose." Martinez Loyola explained that he moved his duffel bag to accommodate his cellmate, then took ibuprofen for a toothache and fell asleep. Martinez Loyola said he did not hear the loudspeaker announcement for the 4:00 p.m. count and that his cellmate, who is blind and does not understand English, did not wake him up. Martinez Loyola also said it is difficult for him to understand the loudspeaker announcements. Martinez Loyola did not request any witness statements in his defense.

Based on Martinez Loyola's statement and the officers' statements, the hearing officer found Martinez Loyola guilty of violating WAC 653 because his failure to follow the rules of count caused two inaccurate counts. The hearing officer accepted Martinez Loyola's claim that he did not intentionally evade count, but noted that WAC 653 prohibits causing an inaccurate count regardless of

3

deceptive intent.  The hearing officer also pointed out that Martinez Loyola has been through "probably a couple hundred counts" since arriving at CRCC and is "not new to this."  The hearing officer warned Martinez Loyola about the importance of complying with count procedures and issued the lowest possible sanction for any infraction of any level: a reprimand and warning.

Martinez Loyola administratively appealed his infraction to the superintendent, asserting that he did not hide himself on purpose and did not interfere or obstruct the officers.  Martinez Loyola explained that after the hearing, his cellmate told him that he had tried to signal to a corrections officer whether he should wake Martinez Loyola during count and they signaled, "no."  Martinez Loyola argued that giving him a serious infraction based on a misunderstanding between his cellmate and the officer was unfair.  He also stated that he did not bring a witness to the hearing because he was not sure it was necessary and did not see how it could help.

After reviewing the disciplinary process and the evidence, the superintendent/designee concurred with the hearing officer's findings, determined that Martinez Loyola received a fair and impartial hearing, and affirmed the infraction decision and sanctions.

Martinez Loyola then initiated this PRP.

ANALYSIS

*Standard of Review*

To prevail on this PRP under RAP 16.4, Martinez Loyola must show that he is under restraint and that the restraint is unlawful.[2] *In re Pers. Restraint of Grantham*, 168 Wn.2d 204, 212-13, 227 P.3d 285 (2010). Under RAP 16.4, a prisoner is under "restraint" if the petitioner is confined, and the "restraint" is unlawful only if the conditions or manner of the "restraint" violated the Constitution or the laws of Washington, or other grounds exist to challenge the legality of the restraint. RAP 16.4(b); RAP 16.4(c)(6)-(7). A serious infraction that results in a loss of earned early release credit implicates a liberty interest subject to minimum due process protections. *In re Pers. Restraint of Gronquist*, 138 Wn.2d 388, 397-98, 978 P.2d 1083 (1999). Although Martinez Loyola received only a reprimand for his serious infraction, he is under "restraint" because he is confined in a state correctional facility and has a serious infraction on his record. *See Kozol v. Dep't of Corr.*, 185 Wn.2d 405, 410-11, 379 P.3d 72 (2016) (even when discipline does not result in the loss of good time credit, DOC's regulatory procedures and safeguards apply given that a serious infraction "casts a shadow over an inmate's institutional history" that "could be

---

[2] Unlike a PRP challenging a judgment and sentence, petitioners seeking relief from prison discipline where no prior judicial review has been afforded are not required to show actual and substantial prejudice or a miscarriage of justice. *In re Pers. Restraint of Grantham*, 168 Wn.2d 204, 214, 227 P.3d 285 (2010).

considered when determining sanction for later infraction."). The question is whether his restraint is unlawful.

"Offenders facing discipline are not entitled to the full panoply of constitutional procedures given criminal defendants at trial." *Grantham*, 168 Wn.2d at 215. When reviewing a prison disciplinary proceeding, we determine whether the action taken was "so arbitrary and capricious as to deny the petitioner a fundamentally fair proceeding." *In re Pers. Restraint of Reismiller*, 101 Wn.2d 291, 294, 678 P.2d 323 (1984). A disciplinary action is not arbitrary or capricious if it meets the minimum due process protections applicable in prison disciplinary proceedings and is supported by "some evidence." *Grantham*, 168 Wn.2d at 215-16.

Minimum due process protections are satisfied if the inmate (1) receives notice of the alleged violation, (2) has an opportunity to present documentary evidence and call witnesses (when not unduly hazardous to institutional safety and correctional goals), and (3) receives a written statement of the evidence relied upon and the reasons for the disciplinary action. *Gronquist*, 138 Wn.2d at 396-97. The "some evidence" standard is satisfied as long as there is "any evidence" in the record to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455-56, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985). "Where an inmate claims lack of fair notice and is nevertheless found guilty of committing a serious infraction, 'some evidence' in the record of the hearing must support a finding that the inmate did receive fair notice of the

prohibited conduct, despite [their] protests to the contrary." *In re Pers. Restraint of Krier*, 108 Wn. App. 31, 33, 29 P.3d 720 (2001).

*Sufficiency of the Evidence*

Martinez Loyola claims that he was denied minimum due process protections because the evidence was insufficient to support the hearing officer's finding that he was guilty of violating WAC 653. Martinez Loyola does not dispute that he was familiar with CRCC's count procedures or that he caused two inaccurate counts by failing to comply. Instead, Martinez Loyola asserts that the evidence was insufficient to sustain the guilty finding because WAC 653 punishes only deceptive or distracting conduct and the parties agree he did not engage in such conduct. DOC asserts that the plain language of WAC 653 does not require deception or distraction and that "causing an inaccurate count" is sufficient to violate the rule. We agree with DOC.

The issue presented is a matter of statutory interpretation, which we review de novo. *State v. Pratt*, 196 Wn.2d 849, 852, 479 P.3d 680 (2021). "The rules of statutory interpretation equally apply to interpretation of agency rules and regulations." *Alstom Power, Inc. v. Dep't of Revenue*, 26 Wn. App. 2d 36, 45, 526 P.3d 855 (2023) (citing *Dep't of Licensing v. Cannon*, 147 Wn.2d 41, 56, 50 P.3d 627 (2002)). "In interpreting a statute, this court looks first to its plain language." *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). "[W]e employ traditional rules of grammar in discerning the plain language of the statute." *State v. Bunker*, 169 Wn.2d 571, 578, 238 P.3d 487 (2010). If the

7

statute's meaning is plain on its face, we give effect to that plain meaning as an expression of legislative intent. *State v. Hirschfelder*, 170 Wn.2d 536, 543, 242 P.3d 876 (2010). But "[i]f statutory language is susceptible to more than one reasonable interpretation, it is ambiguous, and we may resort to extrinsic aids such as legislative history to resolve the ambiguity." *State v. Buck*, 2 Wn.3d 806, 815, 544 P.3d 506 (2024). " 'A statute is ambiguous only if it can be reasonably interpreted in more than one way, not merely because other possible interpretations exist.' " *State v. Cathers*, 13 Wn. App. 2d 29, 32, 461 P.3d 375, 377 (2020) (quoting *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 354, 144 P.3d 276 (2006)).

We conclude that WAC 653 unambiguously authorizes a hearing officer to impose a finding of guilt where an inmate either caused an inaccurate count or interfered with count through deception. WAC 653 prohibits "[c]ausing an inaccurate count *or* interfering with count by means of unauthorized absence, hiding, concealing oneself, or other form of deception or distraction[.]" (emphasis added). The word "or" is most commonly used in the disjunctive and employed to indicate an alternative. *Garcia v. Dep't of Soc. & Health Servs.*, 10 Wn. App. 2d 885, 911, 451 P.3d 1107 (2019); *State v. Riofta*, 134 Wn. App. 669, 682, 142 P.3d 193 (2006) ("[w]e presume that the word 'or' does not mean 'and' and that a statute's use of the word 'or' is disjunctive to separate phrases unless there is a clear legislative intent to the contrary." (quoting *HJS Dev., Inc. v. Pierce County*, 148 Wn.2d 451, 473 n.95, 61 P.3d 1141 (2003)). Under Martinez Loyola's

interpretation, every violation for causing an inaccurate count would also be a violation for interfering with count, thereby rendering the first option meaningless. The only reasonable interpretation of WAC 653 is that causing an inaccurate count is itself sufficient to violate the rule, regardless of deceptive intent.[3]

Martinez Loyola contends that WAC 653 should not be interpreted to impose strict liability for "[c]ausing an inaccurate count." " 'Strict liability crimes' are crimes that 'criminalize conduct regardless of whether the actor intended wrongdoing.' " *State v. Christian*, 18 Wn. App. 2d 185, 210, 489 P.3d 657 (2021) (quoting *State v. Blake*, 197 Wn.2d 170, 179, 481 P.3d 521 (2021)). "[D]eciding whether a statute sets forth a strict liability crime is a statutory construction question aimed at ascertaining legislative intent." *State v. Bash*, 130 Wn.2d 594, 604-05, 925 P.2d 978 (1996).

DOC asserts that Martinez Loyola's arguments are misdirected because he was not found strictly liable for the offense. Resp. Supp. Br. at 1. But in any event, Martinez Loyola does not dispute that DOC had the authority to deter non-compliance with count procedures by imposing strict liability for causing an inaccurate count. *See State v. Anderson*, 141 Wn.2d 357, 361, 5 P.3d 1247 (2000) ("The Legislature may create strict liability crimes."). Nor does he analyze

---

[3] The parties dispute whether the last antecedent rule applies to WAC 653. "The last antecedent rule states that 'unless a contrary intention appears in the statute, qualifying words and phrases refer to the last antecedent[.]' " *State v. Bunker*, 144 Wn. App. 407, 418, 183 P.3d 1086 (2008) (quoting *City of Spokane v. Spokane County*, 158 Wn.2d 661, 673, 146 P.3d 893 (2006)). We need not rely on the last antecedent rule to determine that WAC 653 unambiguously bars the conduct at issue here, so we do not address these arguments further. For the same reason, we need not address arguments regarding legislative history.

or even mention the factors our Supreme Court adopted in *Bash* to determine whether the legislature intended to create a strict liability crime. *See Bash*, 130 Wn.2d at 605-06.

Martinez Loyola also asserts that DOC's interpretation is morally counterintuitive because it punishes "[c]ausing an inaccurate count" in all circumstances without regard to culpable mental state while also punishing "interfering with count" only when it is deliberately deceptive. But as DOC points out, "causing an inaccurate count" is appropriately classified as a serious violation because it significantly impacts facility operations whether intentional or not. In contrast, an inmate who merely "[i]nterfer[es] or fail[s] to comply with count procedures"—without actually "causing an inaccurate count" or engaging in "deception or distraction"—may be found guilty of WAC 137-28-220(1)(214), a general violation. Viewing these disciplinary count regulations as whole further demonstrates that WAC 653 unambiguously punishes the act of causing an inaccurate count, regardless of an individual's motivation for doing so.

*Notice*

Martinez Loyola does not dispute that he received notice of the infraction and the evidence against him. Rather, he contends that WAC 653 is unconstitutionally vague as applied to him because it fails to give notice that it is a strict liability offense.

"The due process vagueness doctrine seeks to ensure that the public has adequate notice of what conduct is proscribed and to ensure that the public is

10

protected from arbitrary ad hoc enforcement." *State v. Saunders*, 132 Wn. App. 592, 599, 132 P.3d 743 (2006). A statute or regulation is "void for vagueness if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application." *O'Day v. King County*, 109 Wn.2d 796, 810, 749 P.2d 142 (1988). Statutes are presumed constitutional, and the standard for finding a statute unconstitutionally vague is high. *State v. Watson*, 160 Wn.2d 1, 11, 154 P.3d 909 (2007).

Martinez Loyola asserts that WAC 653 is unconstitutionally vague as applied because it did not put him on notice that it prohibited him from passively falling asleep in his own bunk. But as discussed above, WAC 653 unambiguously prohibits "[c]ausing an inaccurate count[.]" It is undisputed that Martinez Loyola understood the rules of formal standing count. The hearing officer expressly based their decision on the fact that Martinez Loyola knew the rules because he had been through count "a couple hundred" times at the time he received the infraction. Contrary to Martinez Loyola's claim, he was not infracted for "completely innocent conduct." He was punished because his failure to follow the rules caused two inaccurate counts.

Martinez Loyola also contends that WAC 653 is vague as applied because it did not put him on notice that inadvertence was not a defense to the charge. He points out that the serious infraction report expressly accused him of deceptive conduct. He claims that had he known his innocent explanation would not suffice, his cellmate would have testified that the inaccurate count was

caused by miscommunication with the counting officer rather than by Martinez Loyola's conduct.[4]  Again, WAC unambiguously prohibits the conduct that led to the infraction.  And Martinez Loyola successfully convinced the hearing officer of his lack of deceptive intent and obtained the lowest possible sanction.

We conclude that Martinez Loyola received a fundamentally fair proceeding, and we deny the PRP.

_Smith, J._

WE CONCUR:

_Coburn, J._          _Mann, J._

---

[4] Citing _Krier_, DOC asserts that this court may not consider declarations Martinez Loyola submitted as substantive evidence in support of his argument. In _Krier_, this court rejected DOC's attempt to supplement the record by attaching a declaration in response to the petitioner's PRP.  108 Wn. App. at 44-45.  DOC cites no authority for the proposition that the same principle applies to petitioners. And even if we were to consider Martinez Loyola's declarations, our analysis would not change.